**SIGNED THIS: March 2, 2016**

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| KRISTINA K. CLORE, ) | Case No. 15-81509 |
| ) | |
| Debtor. ) | |

**OPINION**

Before the Court is the motion of the Chapter 7 Trustee to vacate this Court's Order converting the case to Chapter 13, on the motion of the Debtor, Kristina K. Clore (DEBTOR). The issue before the Court is whether the amount of the DEBTOR'S unsecured debts exceeds the limit set forth in section 109(e), rendering her ineligible to be a Chapter 13 debtor. The answer depends on whether a guaranty counts as a noncontingent, liquidated, unsecured debt for purposes of that provision.

The material facts pertaining to the issue before the Court are not in dispute. The DEBTOR filed her Chapter 7 petition on October 5, 2015. About nine months earlier, on January 8, 2015, Clore Real Estate Development, LLC (Clore Real Estate), a company engaged in the development, management and sale of real estate, for whom the DEBTOR

serves as manager, borrowed $774,800 from Princeville State Bank (PSB), in order to purchase property in Dunlap, Illinois. Clore Real Estate executed a promissory note calling for monthly payments of $4,090.59, with a balloon payment due at maturity on January 6, 2020. The note is secured by a mortgage on the Dunlap property owned by Clore Real Estate and by a second mortgage on the DEBTOR'S residence, which she owns jointly with her husband. The DEBTOR and her husband personally guaranteed the loan by PSB.[1]

The Chapter 7 Trustee applied to employ an attorney to avoid transfers, determine the validity of liens and to liquidate the DEBTOR'S interest in certain assets, including Clore Real Estate. The Chapter 7 Trustee filed a motion to assume the operating agreement of Clore Real Estate. Prior to expiration of the date for filing objections to the Chapter 7 Trustee's application to employ and her motion to assume, the DEBTOR filed a motion to convert to Chapter 13. An order was entered granting the motion on that same day. The DEBTOR filed objections to the Chapter 7 Trustee's motions, based on the conversion of the case.

The Chapter 7 Trustee filed a motion to vacate the order converting the case, asserting that the DEBTOR'S noncontingent, liquidated, unsecured debts exceed the statutory maximum permitted by section 109(e) of the Bankruptcy Code and, secondly, that her bad faith conduct prior to and during the Chapter 7 case bars her from proceeding as a Chapter 13 debtor. The DEBTOR denies her ineligibility and the bad faith allegations. At the hearing on the Chapter 7 Trustee's motion, the parties stipulated that the issue of the

---

[1] The guaranty is an unlimited one, guaranteeing all obligations of Clore Real Estate to PSB, but there is no dispute that PSB made only a single loan to Clore Real Estate.

2

DEBTOR'S eligibility turns on the nature of the guaranty, as either contingent/noncontingent and/or unliquidated/liquidated. Most significantly (as explained below), the parties agree that the PSB loan was not in default on the date the petition was filed. The parties also agree that the issue of the DEBTOR'S bad faith, which would require an evidentiary hearing to resolve, would be dealt with later, if required.[2]

On Amended Schedule D, the DEBTOR listed the debt to PSB as secured by a second mortgage on her residence, scheduling the total amount of the claim as $767,458. Based on the scheduled value of the house at $350,000, and the first mortgage loan balance of $121,800, the claim of PSB on her Guaranty is bifurcated into a secured component of $228,200 and an unsecured component of $539,258. Not including that large unsecured component, the DEBTOR'S other unsecured debts total only slightly more than $200,000. So in order for the DEBTOR to be eligible to be a chapter 13 debtor, the PSB Guaranty claim must be either contingent or unliquidated. If it is both noncontingent and liquidated, she is not eligible to be a chapter 13 debtor.

> The PSB Guaranty executed by the DEBTOR, provides, in pertinent part:
>
> [T]he Undersigned guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:
> \* \* \*
> B. [T]he Undersigned guarantees to Lender, the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender . . . .

---

[2] The TRUSTEE makes a number of allegations of bad faith conduct on the DEBTOR'S part both prior to the filing of the petition and in connection therewith: the granting of a second mortgage against her residence to secure Clore Real Estate's indebtedness to PSB; the removal of her name from an investment account held in joint tenancy with her husband in July, 2015; her transfer of her residence from joint tenancy to tenancy by the entireties, notwithstanding the reversal of the transfer less than one month later; and her failure to schedule a health savings account and an attorney fee retainer being held in connection with prepetition state court litigation.

3

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder . . . .

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness . . . .

\*\*\*

This guaranty is unsecured.

\*\*\*

6. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things . . .(vi) any failure to . . . enforce any collateral security . . . .

\*\*\*

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

\*\*\*

13. This guaranty shall be . . . effective upon delivery to Lender, without further act, condition or acceptance by Lender . . . .

The sole issue before the Court at present is the DEBTOR'S eligibility to be a Chapter 13 debtor under section 109(e) of the Bankruptcy Code. Section 109(e) provides, in pertinent part that:

> Only . . . an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,174 . . . may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e). A claim is considered to be "contingent," if it is one conditioned upon the occurrence or happening of a future event that is uncertain. *Saint Catherine Hospital of Indiana, LLC v. Indiana Family & Soc. Servs. Admin.*, 800 F.3d 312 (7th Cir. 2015). A claim is liquidated if the amount has been ascertained or can readily be calculated. *Matter of Knight*, 55 F.3d 231 (7th Cir. 1995).

4

In Illinois, there are several recognized methods by which a person may lend his name for the benefit of a borrower to enable the borrower to obtain a loan. By signing the promissory note for accommodation, he incurs liability as an "accommodation party." 810 ILCS 5/3-419(a). Depending upon the intent of the parties and whether descriptive words accompany the signature, an accommodation party may be an accommodation maker, a surety or a guarantor. 810 ILCS 5/3-419(c).

Alternatively, by signing a separate document evidencing a promise to pay the debt of another, a person incurs liability either as a surety or a guarantor. A suretyship differs from a guaranty in that a suretyship is a primary obligation to see that the debt is paid, while a guaranty is a collateral undertaking, an obligation in the alternative to pay the debt if the principal does not. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill.2d 455, 474, 939 N.E2d 487 (2010). The Chapter 7 Trustee does not contend that the PSB Guaranty is, in actuality, a disguised suretyship agreement.

The Chapter 7 Trustee, based on the express language of the PSB Guaranty set forth above, classifying the guaranty as absolute and unconditional, contends that the DEBTOR'S liability became fixed and noncontingent upon its execution. In the Chapter 7 Trustee's view, the DEBTOR'S liability under the PSB Guaranty would not be perceptibly different had she co-signed the primary obligation, i.e., the PSB note. That is, however, an equivalence that the law does not make.

Neither party argues that the law of another state applies here, so the Court will interpret the PSB Guaranty as a matter of Illinois law. The principles of Illinois law relating to guaranty contracts are well established. A guaranty contract is an agreement between

5

a guarantor and a creditor wherein the guarantor agrees to be secondarily liable to the creditor for a debt or obligation owed to the creditor by a third party. *Int'l Supply Co. v. Campbell*, 391 Ill.App.3d 439, 448-49, 907 N.E.2d 478 (2009). The obligation created by a guaranty is an independent obligation separate from the debt instrument between the lender and the borrower. *Stonegate Properties, Inc. v. Piccolo,* 2016 IL App (1st) 150182, 2016 WL 312084 (citing *Armbrister v. Pushpin Holdings, LLC*, 896 F.Supp.2d 746 (N.D.Ill. 2012)). A guarantor's liability is secondary, triggered by the borrower's default on the obligation that the borrower owes to the lender. *Int'l Supply Co. v. Campbell,* 391 Ill.App.3d at 448-49; *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.,* 238 Ill.2d at 472 (unlike a surety, whose liability is primary, a guarantor is only liable if the primary obligor defaults).

With primary versus secondary liability as the differentiating factor, Illinois courts have drawn a clear and bright line between suretyship agreements and guaranties. The Chapter 7 Trustee's argument that a guaranty may create primary liability directly contradicts a distinction that has been settled law for at least a century and remains so today. No Illinois appellate or supreme court opinion suggests that there is any uncertainty or ambiguity about this distinction.

In Illinois, guaranties fall into two mutually exclusive categories: guaranties of collection and guaranties of payment. Under a guaranty of collection, the lender is required to look first to the primary obligor, the maker of the note, for payment. The guarantor's liability is not triggered until the lender has first exhausted its legal remedies to collect from the primary obligor. The Illinois Supreme Court has said that a guaranty of collection is conditional in that the guarantor's liability is conditioned upon the lender

6

making diligent use of the ordinary legal means to collect from the primary obligor, but without success. *Beebe v. Kirkpatrick,* 321 Ill. 612, 616 (1926). A guarantee of payment, on the other hand, is not subject to the condition that the lender first attempt to collect from the primary obligor. A contract guaranteeing the payment of a note is said to be an absolute contract by which the guarantor undertakes to pay the debt at maturity if the primary obligor fails to do so. If not paid when due, the guarantor may be sued at once. *Beebe,* at 616. These well established distinctions between a guaranty of collection versus a guaranty of payment, remain current and effective in the modern era.[3] *See Bank of America Nat. Trust & Sav. Ass'n v. Schulson,* 305 Ill.App.3d 941, 946 (1st Dist. 1999).

A guaranty is a contract, the terms of which are the subject of negotiation between the creditor and the guarantor. Either party may premise the guaranty upon a condition, though typically the condition is imposed by the guarantors. *State Bank of East Moline v. Cirivello,* 74 Ill.2d 426, 431, 386 N.E.2d 43 (1978). For example, one guarantor may sign a guaranty subject to the condition that others will also guarantee the debt, in which event the guaranty is unenforceable unless the other guaranties are signed and delivered.[4] *Id* at 431-32. A lender who wishes to minimize the likelihood that its guaranty agreement might be construed as subject to a condition, will draft the guaranty using words that negate the existence of all conditions, express, implied or verbal. Similarly, in order to achieve

---

[3] Some Illinois appellate courts have referred to a guaranty of payment as an "absolute guaranty." This alternative nomenclature is a distinction without a difference. Those courts apply the same rule, that the guarantor does not become liable until the primary obligor defaults. *See, Roels v. Drew Industries, Inc.,* 240 Ill.App.3d 578, 583-84 (Ill.App. 1 Dist. 1992); *Lawndale Steel Co. v. Appel,* 98 Ill.App.3d 167, 170, 423 N.E.2d 957 (Ill.App. 2 Dist. 1981)(noting that an absolute guaranty, unlike a conditional one, imposes no duty upon the creditor to attempt collection from the primary debtor before looking to the guarantor).

[4] Parol evidence is admissible to prove a condition precedent to the effectiveness of a guaranty. *Cirivello,* 74 Ill.2d at 432.

7

certainty that a guaranty is one of payment, not collection, the drafter will use words that clearly indicate payment is being guarantied and that the guarantor's liability is not conditioned on the lender first attempting to collect from its borrower or by liquidating any collateral.

In this Court's view, as used in guaranty agreements, the terms "absolute" and "unconditional" are recognized terms of art designed to exclude any and all contractual conditions. But the Chapter 7 Trustee's argument goes too far. The fundamental principle that a guarantor's promise of payment is secondary, meaning that his liability does not ripen until the debt has come due and the primary obligor is in default, is not a contractual condition that may be altered or dispensed with at the whim of the parties. The principle of secondary liability is, instead, an unseverable aspect of the nature of a guaranty, that distinguishes a guaranty from a suretyship. As a noncontractual condition, it is not subject to contractual modification or waiver.

Thus, the terms "absolute," "unconditional" and similar verbiage used in a guaranty agreement serve to exclude contractual conditions and clarify that the undertaking is a guaranty of payment, not merely collection. But those terms cannot render the guarantor a primary obligor, as if he were an accommodation maker or a surety. In this Court's view, there are no words that could be used in a guaranty to impose primary liability upon the guarantor. If there were, the instrument would not be a guaranty under Illinois law.

The PSB Guaranty, signed by the DEBTOR, provides that she "absolutely and unconditionally guarantees to Lender the full and prompt payment when due" of the indebtedness incurred by Clore Real Estate Development, LLC. This language and the

8

other provisions relied upon by the Chapter 7 Trustee, clearly and unambiguously establish the PSB Guaranty as a guaranty of payment, not of collection, with its effectiveness not subject to any condition precedent. Nevertheless, the DEBTOR is a guarantor, not a surety or an accommodation maker. As a guarantor, her liability is secondary and is contingent upon a default by Clore Real Estate.

On this issue, the Illinois Supreme Court has been clear and consistent over the years, that a guarantor's obligation to pay is not triggered until there has been a default by the primary obligor, either because the primary obligor has failed to pay the debt at its maturity, or because the debt has otherwise come due on account of a default of the primary obligor. This rule dates at least to *Vermont Marble Co. v. Bayne,* 356 Ill. 127, 132 (1934), followed by *Kreizelman v. Stevens,* 381 Ill. 73 (1942), and most recently by *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill.2d at 472.

Other bankruptcy courts, as well, have long considered a guaranty to be a "classic" example of a contingent claim.[5] *In re Barnett*, 42 B.R. 254 (Bankr.S.D.N.Y. 1984); *In re Kaplan*, 186 B.R. 871 (Bankr.D.N.J. 1995). An absolute guaranty remains contingent until the default of the principal obligor. *In re Pulliam*, 90 B.R. 241 (Bankr.N.D.Tex. 1988); *In re Flaherty*, 10 B.R. 118 (Bankr.N.D. Ill. 1981). The same argument the Chapter 7 Trustee makes here has been rejected before. Reversing the bankruptcy court's ruling that the debtors were ineligible to proceed under chapter 13, based on its determination that their liability under

---

[5]Although it is not a factor in the outcome here, a finding that a guarantor's liability is contingent is consistent with the real-world experience that most commercial guaranties never get called because the primary obligor pays off the loan without default.

four guaranties were noncontingent, notwithstanding that the primary obligor was not in default, the district court in *Glaubitz v. Grossman*, 2011 WL 147931 (E.D. Wis. 2011) held:

> The bankruptcy court erred because a guaranty is, by its very nature, a contingent liability. "The classic example of a contingent debt is a guaranty because the guarantor has no liability unless and until the principal defaults." *In re Pennypacker*, 115 B.R. 504, 507 (Bankr.E.D.Pa. 1990); *see also In re Martz*, 293 B.R. 409, 411 (Bankr.N.D.Ohio 2002)(a guaranty is the "quintessential" type of contingent debt). Here, it is undisputed that the required contingency–default by the primary obligor–did not occur. Even though the guaranties contain language suggesting that the guarantor's liability is "absolute," "unconditional," or even "joint and several," this does not alter the secondary nature of a guarantor liability."

Because there is no dispute that Clore Real Estate was not in default at the time the DEBTOR filed her bankruptcy petition, her guaranty obligation was a contingent one for purposes of section 109(e), meaning that the DEBTOR is not rendered ineligible to proceed under Chapter 13 by reason of exceeding the debt limit set forth in section 109(e).

The issue of whether the DEBTOR'S contingent liability on the PSB Guaranty is liquidated or not is readily resolved. It is well established that whether a debt is "liquidated" turns on whether the amount is "readily determinable." *In re Adams,* 373 B.R. 116, 119 (10th Cir.BAP 2007); *Matter of Knight,* 55 F.3d at 235 (if the amount of a claim has been ascertained or can readily be calculated, it is liquidated). The amount of a claim is readily determinable if the process of determining the claim is fixed, certain, or otherwise determined by a specific standard. *Adams,* 373 B.R. at 120. On the other hand, if the amount of the claim depends on a "future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." *Id.,* citing *Mazzeo v. United States* (*In re Mazzeo*) 131 F.3d 295, 304 (2d Cir. 1997). Where the amount of a debt is determinable by reference to an

agreement or by a simple computation, it is readily ascertainable and thus liquidated. *In re Pantazelos*, 540 B.R. 347, 351 (Bankr.N.D.Ill. 2015). A claim for repayment of a loan of a fixed sum, the balance of which is easily calculated, is considered to be a liquidated debt. *See In re Prawer,* 2014 WL 4748334 (Bankr.N.D.Ill. 2014); *In re Robertson,* 143 B.R. 76, 79 (Bankr.N.D.Tex. 1992).

The scope of the issue of whether a claim based on a loan is liquidated is ordinarily limited to whether the dollar amount of the debt balance is readily ascertainable. The fact that the lender may have unexercised recourse against collateral or other obligors, does not make a noncontingent debt unliquidated. *In re Sappah,* 2012 WL 6139644 (Bankr.E.D.N.C. 2012); *In re Poage,* 92 B.R. 659, 665 (Bankr.N.D.Tex. 1988). *See, also, In re LightSquared, Inc.,* 2014 WL 5488413 (Bankr.S.D.N.Y. 2014)(rejecting the "circular argument" that payment through surrender of collateral creates a contingency that renders a claim on a guaranty unliquidated, as confusing and conflating the principles of "contingent" and "unliquidated"). However, if the debt is contingent on collection against other persons or collateral, such as a guaranty of collection, it may also be unliquidated until those collection proceedings have been concluded. But where a guaranty is not contingent upon the exercise of other collection remedies, such as an absolute and unconditional guaranty of payment, the existence of collateral or the liability of other parties does not cause the claim against the guarantor to be unliquidated. *In re Croney,* 2011 WL 1656371 (Bankr.W.D.Wash. 2011).

The DEBTOR does not contend that the balance due PSB on the Clore Real Estate loan is not readily ascertainable. Since the PSB Guaranty is a guaranty of payment not

subject to other collection remedies, the fact that PSB's loan is secured does not mean that the claim on the Guaranty is unliquidated. The Court determines that PSB's claim against the DEBTOR is a liquidated claim for purposes of section 109(e). Because the PSB claim has been determined to be a contingent one, however, it is properly excluded from the unsecured debt computation envisioned by that eligibility provision. Therefore, the DEBTOR is eligible to be a chapter 13 debtor under section 109(e).

The Clerk of the Court is directed to set the matter for status conference. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###